JAMES H. WALKER *against* THOMAS H. BRADLEY.

ERROR *to Hempstead Circuit Court.*

An agreement between a judgment creditor and his judgment debtor, that a writ of garnishment upon the judgment shall not issue against a person indebted *to the* debtor, is a mere *nudum pactum;* and if it were not, it would be no ground for a dismissal of the suit.

In a suit commenced by writ of garnishment under the Territorial statute, the plaintiff had the right to deny the truth of the answer, and to empannel a jury to try the issue so made up.

Consequently an action of garnishment does not go off, like an injunction, on the coming in of answer; nor can the defendant move to dismiss on its coming in.

If the answer of the garnishee disclose funds and available means placed in his hands by one of the judgment debtors, for the purpose of paying off the same debt, it is sufficient to charge the garnishee.

Levying an execution on the property of a judgment debtor is no satisfaction, where the property does not remain in possession of the Sheriff, but is re-delivered to the defendant on his giving a delivery bond.

And a levy upon the property of one defendant is no satisfaction as to his co-defendant. Nothing but *actual* satisfaction releases the co-defendant.

And such a levy upon the property of one defendant cannot be set up as a defence in an action of garnishment against the debtor of the co-defendant.

The reception by the officer holding the execution, of bank notes, &c., to the full amount of the execution, from one defendant, is no defence to a person garnisheed as *debtor of a co-defendant, unless the plaintiff* authorized the receipt of such funds, or accepted them after they were received; because, otherwise, it was no *actual* satisfaction.

The true rule is, that where a levy under execution is made upon personal property of sufficient value to satisfy the execution, and the property so seized does not again come to the possession of the debtor, the levy is a satisfaction, as to that debtor, and *as to him only.* But if the debtor again receive the goods, there is no satisfaction.

The satisfaction dates from the time of the levy. So long as the property remains in the hands of the Sheriff, or *in custodia legis,* the debtor has the general property in it, with which he does not part until the sale, for until then it is possible that he may again take the property.

Actual satisfaction by sale of one defendant's property is a satisfaction as to other defendants.

No matter of defence, arising after action brought, can be pleaded in bar *generally;* but only in bar of the *further* maintenance of the suit. If it arise after issue joined, it must be pleaded *puis darrein continuance.*

The garnishee, upon answering, might produce in court the goods, moneys, credits and effects in his hands, and claim to be discharged with costs.

If he failed in this, and the court ordered him to proceed and collect the notes, accounts, receipts, &c., in his hands, and he made no objection to such order, he could be subsequently ruled to account; and if such rule being made he rendered no account, nor discharged himself from liability by showing that he could not collect the debts in his hands, the court was right in decreeing against him for the whole amount of evidences of debt before then admitted to be in his hands.

Absent, RINGO, *Chief Justice.*

Walker *against* Bradley.

This suit was commenced in Hempstead Circuit Court, by filing a bond for costs, and issuance of a writ of garnishment by Bradley. The original writ of garnishment was issued on the 6th of January, A. D. 1835, and not being served, an alias writ was issued on the 7th August, 1835, which was duly served.

The substance of the alias writ is, that Bradley, on the 21st of November, A. D. 1835, in Hempstead Circuit Court, had recovered judgment against Joshua T. Walker, Simon T. Sanders, and James W. Walker, for $7,144 70 cts., debt, and $208 38 damages, and costs of suit, amounting to $100: that said judgment remains in full force, &c., in no way reversed, vacated or satisfied: that having cause to believe that James H. Walker is indebted to the defendants, individually or collectively, and has in possession their goods, chattels, &c. And, therefore, the writ commanded James H. Walker to be summoned to appear and answer what might be objected against him.

At the return term of the writ Bradley filed his interrogatories. At the same term the garnishee filed his motion to *quash*, dismiss, and set aside the proceedings in the case, because they were unauthorized by law, illegal and irregular; and also because they were contrary to an express written agreement, entered into between Bradley, by his agent Trigg, and Joshua T. Walker, which agreement is set forth in the motion. The motion was overruled.

On January 30, 1837, the garnishee filed his answer to the interrogatories. He admitted, that when the writ was served, he had in his hands sundry notes, accounts, and receipts, placed in his hands by Joshua T. Walker, one of the defendants, for the purpose of paying off the judgment aforesaid, and amounting, in all, to the sum of 3,290 76 cts., a schedule whereof is made part of the answer, and on which about two hundred dollars had been collected by him—and denying any other indebtedness, or the possession of any other goods, &c., of any of the defendants.

At April term, 1837, an order was made that the sum of one thousand dollars, paid to Bradley's agent by the garnishee, should be considered as a payment in discharge of the original judgment to that amount, and as so much in exoneration of the garnishee; and that

the garnishee should proceed to collect the debts admitted in his answer to be due.

At the October term, 1838, the defendant again moved to dismiss the suit, on the ground that the whole debt, interest, and costs, had been paid by and collected of James W. Walker.

At April term, 1839, on motion of the plaintiff, the garnishee was ordered to account forthwith, before the court, for the amount of money by him received, the goods, chattels, credits, or effects of the defendants; a true copy of which order was served on the garnishee: and at the same term the motion to dismiss, filed at the previous term, was overruled.

At the same term the garnishee filed his motion and affidavit, to set aside the rule entered against him: the motion is to set aside the rule requiring him to account. The affidavit states that on the original judgment an execution issued to Sevier county, on the 25th of Feb., 1836, which was executed by levying on eight slaves of James W. Walker: that a delivery bond for said slaves was given: that on June 13th, 1836, another execution issued in like manner to Sevier county, against the original defendants and the security in the delivery bond, which was executed by levying on eight negroes, of sufficient value to command the amount of judgment, interest, and costs: that on the 4th of May, 1837, another execution issued to Sevier county against the defendants and said security, commanding the Sheriff to sell the negroes levied on, and that the Sheriff of Sevier county certified on said execution that the same was satisfied: that on the 8th February, 1838, another execution issued to Sevier county, against the defendants and security, on which the same sheriff returned that the same was wholly paid, and that he had the same ready to pay over on demand. The affidavit further states that the affiant has been informed, and believes, that a suit is pending in Sevier Circuit Court against the Sheriff for the money so collected and received of James W. Walker in full of said judgment and recovery. The affidavit refers to the several executions stated to have issued, and they are brought up here as part of the record. They show levies, and the taking of a delivery bond, as alleged in the affidavit, and on the *venditioni exponas*, which issued for $7,144 70 cts. debt, and $203 38 damages, and costs, subject to

a credit of $3,014, paid on January 1, 1835, as by endorsement on previous writs, and on which is endorsed a further credit of $1,000 paid to *Trigg*, agent of *Bradley*, and ordered to be credited on the record as before mentioned, the Sheriff of Sevier county returned that James W. Walker " produced to him the receipt of the agent of Bradley for a draft on E. Myrick for $2,000, which is herewith returned; and that said Sheriff tendered said receipt, together with the sum of $2,039 01, the residue due on the execution, to Hubbard, attorney for Bradley, in Tennessee, Mississippi, Alabama, Louisiana and United States Bank notes, silver, and one copper cent, all which Hubbard refused to receive and accept as a payment of the execution, alleging that he would receive nothing but gold and silver in payment."

· The same return was made on the last execution issued. ·

At November term, 1839, the death of James W. Walker, one of the original defendants was suggested and admitted; and the motion to dismiss was overruled; and the record then proceeds to state, that " it appearing to the court that the said James H. Walker has paid H. the sum of $1,000 to the said Bradley, admitted by the said James to be in his hands, money of the said Joshua T. Walker, *and that there remains in the hands of the said James H. Walker the sum of $2,290 76 cts.*, admitted by him to be in his hands, moneys of said Joshua T., and he having failed to account, under the rule heretofore entered in this case; therefore, on motion of Bradley, it is considered that he have and recover of said James H. Walker the sum of $2,290 76 cts., the residue of the moneys so by him admitted as aforesaid; and that said James H. Walker recover of Bradley his costs."

TRIMBLE, for plaintiff in error:

The counsel for the defendant in error will contend that the Circuit Court could enter no judgment against the garnishee, he having filed an answer according to law, and the prayer of the plaintiff, (Bradley,) in his allegations and interrogatories, unless said garnishee had failed or refused to answer, or had not answered fully; for it is only on one or the other of the foregoing failures of the garnishee that the court can proceed to judgment. But in this case, the garni-

shee having answered, and in his answer tendered the money, credits, and effects in his hands, to the court, he was, by the statute, entitled to an immediate discharge, with costs. The statute, giving this remedy, is special, and in derogation of the common law, and, therefore, must be strictly pursued. 9 *Law Library* 695–6. Its provisions ought not to be extended beyond the manifest and expressed intention of the Legislature. In cases where the garnishee answers, and tenders the goods, chattels, &c., &c., to the court, as in this case, he is entitled to a discharge. *Old Digest, page* 347, *Sec.* 93. Again, the judgment, which the statute authorized the court to render against the garnishee, is a penalty which attaches where he fails or refuses to answer, or does not answer fully; (*ib.*) and this is an additional reason why the statute should be strictly construed.

In this case the answer is made so that, in this respect, the garnishee is not liable to the penalty of a judgment against him, for failing or refusing to answer. He is not liable to the penalty of a judgment against him for not having answered fully, because there is no allegation, or even suggestion, that the answer is not full. *Digest*, p. 347, *Sec.* 93.

It is admitted by the counsel for the plaintiff in error, that where the garnishee answers, but does not produce the goods, chattels, &c., &c., to the court, he would not be entitled to his discharge, with costs, and the court might enforce their production by attachment, founded upon an order on the garnishee to produce the goods, &c., &c., but could render no judgment against him, either for the amount of the original judgment, or for a sum equal to the value of the goods, &c., &c., in the hands of the garnishee.

In this case, Walker, the garnishee, has not been guilty of any default that would authorize a judgment against him, and having answered and there being no allegation that the answer is not full, the law does not warrant a judgment against him, for the value of the goods, &c., &c., in his hands. The law does not authorize such a judgment under any circumstances, where there is an answer full; but if it did, can the court render such a judgment without the intervention of a jury, to ascertain the value of the goods, chattels, credits and effects

in the hands of the garnishee? In this case, what was the value of the notes and accounts in the hands of the garnishee?

The subsequent order of the court, directing the garnishee to proceed to collect and account at the next term, and the order at the April term, 1839, to account, forthwith, to said court, were totally unauthorized by the statute, and were *coram non judice.* The loss of which is made the grounds and foundation of the judgment subsequently rendered against Walker, the garnishee.

• Second. In the second place, the counsel for the plaintiff in error would urge that the original judgment on which the proceedings against him are founded, had, before, and at the time of the rendition of judgment against him, been paid, discharged, and satisfied. First, it was paid, as is evidenced by the return of Wm. White, Sheriff of Sevier county, on the third and fourth execution issued from the Hempstead Circuit Court, and which came to his hands, as Sheriff, to be executed: 10 *Wheaton* 346, 7, and 8; 1 *Burr.* 457; 4 *Dall.* 235; 6 *Taunton* 79, 80, 81, &c. If it be considered as a case of acceptance of bank notes, to the credit of the original defendants, the case of 10 Wheaton 346-7, will govern this case, as well as of actual payment. Second, the original judgment had been discharged by a levy on goods, &c., sufficient to satisfy the execution, see 12 *J. R.* 207, *Hoyt vs. Hudson;* 4 *Cow.* 417, *Ex parte Lawrence,* where the court say that, a levy on personal property, sufficient to satisfy the execution, operates, *per se,* as an extinguishment of the judgment; see also *Clark vs. Withers,* 2 *Ld. Raym.* 1072; 7 *Cow.* 21, where the principle of the case, *ex parte Lawrence,* is recognized and affirmed. Suppose an action of debt had been brought, the former levy would have been a good defence, if pleaded. 7 *Cow,* 315. Goods taken in execution are in the custody of the law; 2 *Wend.* 478, *and the cases there cited.* When goods sufficient to satisfy the judgment are seized on *fi. fa.* the debt is discharged, &c. 4 *Mass. R.* 403; 9 *J. R.* 98; where HOLT, Chief Justice, is quoted: " where the Sheriff levies on goods to the value of the debt, the defendant is discharged, whatever may become of the goods, &c." See also, 2 *Pickering* 590; see also, 1 *Salk.* 323, *Clark vs. Wethers;* 7 *J. R.* 426, *Reed vs. Pryor and*

*Staats;* 6 *Wend.* 562, *Woods vs. Torrey;* 8 *Cow.* 194, *Ontario Bank vs. Hallit.*

If debt had been brought on the original judgment, a plea of levy, or payment, would have been good: 2 *Ld. Raym.* 1072; 7 *Cow.* 315; and what would have been a good plea for the original defendants would discharge the garnishee—he having brought the matter before . *t*he Circuit Court, in his affidavit, by way of an amended, or additional answer? The garnishment, in this case, is as a suit brought on the original judgment; and the appropriate mode of defence is by answer.

By taking the forthcoming and delivery bond, mentioned in the return on the first execution, there was a satisfaction of the original judgment and execution. 1 *Marsh.* 20, 21.

A sheriff, with one execution in his hands, is the legal, general, and public agent of the plaintiff to collect, and had a right to take bank paper in payment and satisfaction of the debt, in the absence of any instructions by the plaintiff to the contrary. Bank paper is the ordinary currency of the country, the representative of money, and uniformly paid and received as such. 10 *Wheaton* 346, *and the cases there cited.*

The general authority of an attorney ceases with the judgment, or, at least, with the issuing of an execution: 8 *J. R.* 361; 10 *J. R.* 221; and it would seem that the agency of the Sheriff begins where the authority of the attorney ceases.

It is in the discretion of the court to receive a plea. *Puis darrein continuance,* after more than one continuance after the time of the matter of the plea arises, and putting in the plea. 1 *Chitty* 456; 5 *Bacon title Pleas and Pleading,* (2) *pages* 143, 144; 10 *J. R.* 161, *Morgan and Smith vs. Dyer.*

PIKE, *Contra:*

The first position assumed here by the plaintiff in error is, that no such writ of garnishment was by law authorized to be issued. Not knowing upon what ground this position rests, we shall merely refer the court to that section of the act of November 7, 1831, placed in Territorial Digest as sec. 89 of judicial proceedings, p. 346; which

Walker *against* Bradley.

authorizes precisely such a writ to issue, in precisely such a case as the present. The writ follows the language of the statute as literally as could possibly be done, and shows upon its face every fact, and contains every averment and recital necessary to constitute a valid, legal writ.

It is assigned for error that the court below refused to dismiss, quash and set aside the proceedings, on the first motion of the plaintiff in error, made at the return term. A bare statement of the grounds on which the motion was predicated, will demonstrate the futility of this assignment of error. The grounds were, that the writ was unauthorized by law, illegal and irregular. It was authorized by law, and every way formal, and even with the strictest regard to technical exactness. The further ground was, that the issuance of the writ of garnishment was contrary to an agreement in writing, between the creditor by his agent, and one of the original defendants. I will not waste time in offering argument or producing authority, to show that this could not be a ground for a motion to quash, set aside, and dismiss. The argument as set forth is a mere *nude pact*, and if it were not, it was never before heard that such matter was made the foundation of such a motion.

It is also assigned for error that the court below did not dismiss the proceedings upon the filing of the answer; but it does not appear that any motion to that end was made—and if there had been, the court could not have sustained it—because an action of garnishment does not go off, like an injunction, on the filing of an answer to interrogatories, but by statute the plaintiff has the right to deny the truth of the answers, and empannel a jury to try the issues raised. In the present case the answer was sufficient to charge the garnishee—for he showed funds and available means placed in his hands by one of the judgment debtors for the express purpose of paying the very debt for which he was garnisheed.

The residue of the grounds assigned for error, present the isolated question arising out of the facts appearing in the motion and affidavit of the garnishee, filed at April term, 1839. The facts upon which this question of law depends, are, briefly, as follows:

The writ of garnishment issued January 6, 1835—the alias writ,

August 7, 1835, upon a judgment obtained November 21, 183 . On the 30th January, 1837, the answer to interrogatories was filed. On the 25th February an execution on the original judgment was levied on negroes of one of the defendants, of sufficient value to pay the debt, and a delivery bond taken. June 13, 1836, an execution issued on the delivery bond, which was in like manner levied. On 4th May, 1837, a *venditioni exponas* issued, and was returned satisfied by receipt of plaintiff for part, and by bank notes of different kinds, silver, and one cent, received by the Sheriff for the residue, all which the plaintiff's attorney had refused to receive.

The question of law is, whether a levy made upon property of the judgment debtor, under execution against him, is a discharge of a garnishee, against whom proceedings had been instituted prior to suing out the execution; and whether, while he admits his indebtedness to the judgment debtor, he is entitled to be relieved from accounting, and to have the proceeding against himself dismissed, upon motion and affidavit alleging these facts? The further question, whether the fact of the receipt by the Sheriff on the execution, of bank notes, which are not a legal tender, and which the plaintiff has refused to receive in satisfaction, operates a discharge of the garnishee from liability to account, and authorizes him to demand a dismissal of the garnishment, is involved in the first question, and amounts to the same thing.

Let us examine then, first, as to the effects upon the rights and liabilities of the garnishee of a levy so made; and of such a payment made to the Sheriff: and second, as to the proper method of taking advantage of it by the garnishee.

First, as to the levy and payment. The third resolution in *Clerk vs. Withers*, 1 *Salk.* 322, is that upon levy under an execution, where the Sheriff returned that he had seized goods to the value of the execution, but they remain in his hands for want of buyers, the defendant is discharged, because the plaintiff having made his election, and the defendant's goods being taken, no further remedy could be had against the defendant, but against the Sheriff only.

The same case is much more fully reported in 6 *Mod.* 290, where it is said, that the case having been twice solemnly argued at the bar,

the court a second time affirmed the jndgment. By the whole court it was declared that the defendant was discharged of the debt, by seizure of goods to the value, and might plead that matter in discharge; and if the money had been levied by sale he might do it. And for this they referred to *Langdrew vs. Wallace*, 1 *Lutw.* 588, which see as *Langdon vs. Wallis*, 1 *Lutw. by Wils.* 181. And that if the money be not levied, but goods to the value seized, he might plead that his goods, *ad valentiam*, &c., were seized. GOULD, J., further quoted as law a case of debt on bond in which two were jointly and severally bound, against one of the obligors, who pleaded a judgment against his co-obligor, and a *fi. fa.* thereon, and goods seized to value, and no return made; and it was adjudged that if the former action were against himself, it had been a good plea, but the doubt was because it was against another. See the case thus referred to, as *Dyke vs. Mercer*, 2 *Shower*, 394. And see also *Clerk vs. Withers*, reported nearly as in 6 *Mod.* in *Ld. Raym.* 1072.

Some of the decisions have gone so far as to hold that after a levy, the general property in the goods no longer remains in the debtor. This notion seems to have been founded on the case of *Clerk vs. Withers*, quoted above, and *obiter dicta* in *Wilbraham vs. Snow*, as reported in 1 *Mod.* 30, 1 *Lev.* 282, and 1 *Vent.* 52. In the report of that case in *Levinz*, the court held that the Sheriff had a special property sufficient to maintain trover; and RELYNGE, C. J., said " the property is altered from the owner, and given to the party at whose suit," &c. But with the reporter, we may well say *quaere of this*. So in 1 *Mod.* 31, MORETON, J., says that the property, after seizure, is not in the defendant. In 6 *Mod.*, quoted above, POWELL, J., said the same; but he again said that if by any accident the execution determine, the debtor shall have his goods again.

In *Ladd vs. Blunt*, 4 *Mass.*, 403, PARSONS, C. J. said " when goods sufficient to satisfy the judgment are seized on a *fieri facias*, the debtor is discharged, even if the Sheriff waste the goods, or misapply the money arising from the sale, or does not return the execution. For by a lawful seizure the debtor has lost his property in the goods. And POWELL, J., in 6 *Mod.*, as above, and PARSONS, C. J., in *Ladd vs. North*, 2 *Mass.* 517, seem to have considered the general property,

in the interim, between levy and sale, to be abeyance.   But all this is now repudiated, and never was in fact the law.   That, after a levy, the general property remains in the debtor until the sale, was held in *Milton and Eldington's case, Dyer*, 98, *No.* 57; and in *Ayer vs. Aden, Yelv.* 44.   In *Lowthal vs. Tompkins*, 2 *Eg. la. Abr.* 381, Ld. HARD-WICKE says the property of the goods continues in the defendant till execution *executed*, and the same thing is decided in *Payne vs. Drew*, 4 *East*, 523.   In *Blake vs. Shaw*, 7 *Mass.* 506, the court say that the general property in goods is not changed until a levy and sale under execution.   And in *The King vs. Wells and Allmett*, in the *Exchequer*, reported at 16 *East*, 278, Ch. Bar. McDONALD said that the property is in no sense, and to no purpose in the world altered, either by delivery of the writ, or by the actual taking possession of the goods.

In *Bayley vs. French*, 2 *Pick.* 590, PARKER, C. J., said, " it is true that when the goods of a debtor are seized in execution, it is a payment *pro tanto* to the value of the goods, whether the officer lawfully dispose of them or not, but this is a privilege which the debtor may waive; for if the officer convert the goods to his own use, or otherwise unlawfully dispose of them, without doubt trespass or trover will lie for the debtor—in which case perhaps his debt remains.   See also the authorities commented on in *Hotchkiss vs. McVickar*, 12 *J. R.* 403.   So in *Hoyt vs. Hudson*, 12 *J. R.* 207, it was held that where a Sheriff has once levied under an execution, property sufficient to satisfy it, he cannot make a second levy.

And for the principle that a levy on personal property, sufficient to satisfy the execution, is an extinguishment of the judgment, see *Wood vs. Torrey*, 6 *Wend.* 562; *Ex parte Lawrence*, 4 *Cow.* 417; *Jackson vs. Bowen*, 7 *Cow.* 21; *Ontario Bank vs. Hallett*, 8 *Cow.* 194.   In the case last quoted it is further decided, that a levy, in virtue of an execution, upon a judgment obtained as collateral security for another judgment, is not a satisfaction of the latter; and that a levy on goods of a *surety*, does not discharge the original debtors.

In *Brown vs. Wotton, Yelv.* 67; *Cro. Jac.* 73, it was held that where two are bound, jointly and severally in a bond, a recovery and execution against one was no bar against the other, without *satisfaction*.

Walker *against* Bradley.

In *Porter vs. Ingraham*, 10 *Mass.* 88, it was held, that where the endorsee of a promissory note had recovered against the two promisors, and one of them had been committed in execution, he was still entitled to his action against the endorser, nothwithstanding the jailer, after liberating the prisoner, had received the amount of the judgment, and tendered it to the assignee of the judgment.

In *Shepard vs. Rowe*, 14 *Wend.* 260, the court said, that a levy upon sufficient personal property to satisfy an execution, is a satisfaction of of the debt; and that the reason assigned was, that " by means of the levy the debtor is deprived of his property. It is not so in the case of a levy upon *real estate.* The debtor, notwithstanding the levy, holds the title and possession, and is in the enjoyment of the profits of the land. There is no satisfaction until sale." And here it will be remembered, that in the present case, the slaves, when levied on under the first execution, were released forthwith, upon the giving of a delivery bond. When again levied on under the second, they were returned by the Sheriff to the debtor; and it does not appear that, upon the *venditioni exponas*, they were levied on at all.

In *McGinnis vs. Lillard*, 4 *Bibb* 490, the court say that, "upon an examination of the doctrine applicable to this point, not an instance can be found of a total discharge from a judgment, except in those cases in which an agreement was made between the parties, whereby a distinct cause of action was created, founded on the consideration of a discharge of the old debt; or *where the property in execution remained, in legal estimation, in the custody of the officer, and as such, liable to be taken and* exposed to sale, by him, in satisfaction of the debt;" and the court, therefore, approved of the decision, that where two were jointly and severally bound, and execution had against one, and his goods *seized* but not *sold*, that this could not be pleaded in an action of debt against the obligor, because it is no *actual* satisfaction. For as each was liable for the whole debt, and the property of one had not been seized; therefore, until the debt was *actually* satisfied, he could not plead in bar the levy of the execution upon the property of the other.

Taking these decisions together, they establish the law upon this subject to be as follows: that where a levy, under execution, is made

74

upon personal property, sufficient to satisfy the execution, and the property, so seized, does not again come to the possession of the debtor, the levy is a satisfaction of the execution, although the property is wasted or misapplied by the Sheriff: but if the debtor again receives the goods levied on, there is no such satisfaction. And although, if he does not retake them, the satisfaction dates from the time of the levy; yet so long as the property remains in the hands of the Sheriff, or in other words, *in custodia legis,* the debtor has the general property in the goods, and does not part with it until the sale; for, until the sale, it is possible that he may again take the property.

And the law is, further, that where there has been *actual* satisfaction of the debt or judgment, by sale of the property of one debtor or defendant, it is a discharge of the other debtors or defendants: but where satisfaction is worked by the levy without sale, only the debtor or defendant whose goods are levied on is discharged, and his co-defendant remains still liable, because the plaintiff has had no *actual* satisfaction.

If we now test the facts of this case, by applying to them the principles thus ascertained, we are certainly warranted in the following conclusions:

First: that the levies made on the negroes of James W. Walker were no extinguishment of the judgment even as to him alone, because the negroes never remained in the hands of the Sheriff, but were, on each levy, immediately re-delivered to James W. Walker, who was never deprived, except for a very brief time, of the possession or profits of them: and for the still more forcible reason, that the Sheriff was acting in strict accordance with law and the dictates of his duty, in returning the negroes, and therefore no action ever accrued to Bradley on the levy made, against the Sheriff—but if any action did accrue, it was for the failure to levy on the *venditioni exponas.*

Second: that much less were the levies an extinguishment or satisfaction of the judgment as to Sanders or Joshua T. Walker, as nothing but *actual satisfaction* would release them; and Bradley might well hold *both* remedies, to wit: against *them* on the judgment, and a suit against the Sheriff for misfeasance in not levying the execution against James W. Walker, or for receiving uncurrent funds, not a le-

gal tender. It was not necessary that he should release Sanders and Joshua T. Walker, in order to entitle him to an action against the Sheriff—for the Sheriff merely took the place of James W. Walker, just as if he had by neglect, become a co-defendant in the original suit.

Third: that if Joshua T. Walker was not discharged, then undoubtedly the garnishee, who was liable as holding in his hands funds of Joshua T. Walker, and not as being a debtor of James W. Walker, could not take advantage of what might possibly be a discharge of James W., but could not exonerate Joshua T. Walker. The latter still remaining liable, his property in the hands of the garnishee was also liable, of course.

With regard to the position, that the judgment was satisfied by the payment made to the Sheriff, there can be no difficulty. He returns that the execution was satisfied by the production, to him, by James W. Walker, of a receipt of Trigg, agent for Bradley, and by the payment of a quantity of bank notes, with some silver, and one copper cent. There is no proof whatever, upon the record, that the receipt of Trigg was good against Bradley, or proved such a payment as the Sheriff was authorized to credit upon the execution. There is no proof that Trigg was Bradley's agent, authorized to receive the money for him; and, therefore, there is no proof that so much of the judgment, $2000, ever was paid at all. True, the Sheriff returns that he received the receipt as a discharge for so much—but there is no proof upon the record that he ought, or had any right or authority to do so.

As to the funds paid him, there is no proof or allegation that he was authorized by Bradley, his agent or attorney, to receive such funds, and it is in proof that Bradley's attorney positively refused to receive them. Whether the improper receipt by the Sheriff, of these funds, from James W. Walker, discharged James W. Walker from the judgment, and compelled Bradley to his action against the Sheriff, is a matter not necessary to be discussed, because, not being an *actual* satisfaction, it could not discharge the other defendants, nor the garnishee, their debtor.

We think, therefore, that we have demonstrated that the facts shown by the affidavit, constituted no discharge to the garnishee.

But even if they did, we contend that he could not have advantage of them by motion. He might, possibly, have done so, if they had constituted a discharge for him, by plea in bar *puis darrein continuance*. For certainly a *motion* to quash, set aside or dismiss the proceedings, cannot be predicated on matter of defence arising subsequent to the commencement of the action. Such matter, (and such is the only matter here set out, for it is not pretended that the judgment was satisfied when the writ of garnishment issued,) can only be pleaded against the *further* maintenance of the suit, that is, *puis darrein continuance*. *Howe's Pr.* 431; *Bull. N. P.* 310. Thus, it is the proper method of taking advantage of a discharge under the insolvent laws, obtained subsequent to the institution of the suit. *Broome vs. Beardsley*, 3 *Caines* 172. So Chitty says, (*Pl.* 532,) that no matter of defence arising after action brought, can possibly be pleaded generally, but ought to be pleaded in bar of the *further* maintenance of the suit; and if it arise after issue joined, it must be pleaded *puis darrein continuance*. · It is a settled rule, says the court, in *Cobb vs. Curtiss*, 8 *J. R.* 470, that no matter of defence arising after action brought, can be pleaded in bar. And see 1 *Chit. Pl.* 636; *Le Bret vs. Papillon*, 4 *East* 507; *Watkinson vs. Inglesby*, 5 *J. R.* 392; *Bourne vs. Joy*, 9 *J. R.* 221.

And even if advantage could be taken of it by motion, the motion would have to contain every thing which would be necessary in a plea of the same matter; and it would be necessary, positively to aver that the judgment debtor, as whose debtor the defendant was garnisheed, had been and was entirely discharged from the judgment, and in no way further accountable to the plaintiff thereon. Nothing of the kind is contained in the motion; but it is altogether vague, and merely contains statements of the acts and returns of the Sheriff, leaving the court thence to infer the satisfaction of the judgment, and consequent discharge of Joshua T. Walker. There is nothing of that certainty which would be required in such a plea. See *Howe* 432; 1 *Saund. Pl. and Ev.* 3; 1 *Ch. Pl.* 637.

Moreover, in any event, the suit could not have been dismissed—because the plaintiff was entitled to his costs.

Inasmuch, therefore, as the record abundantly shows the liability of the garnishee, as a debtor of Joshua T. Walker, and the amount of funds of Joshua T. Walker in his hands, and that his creditor never had been discharged from the judgment, there is, we respectfully submit, no error in the record.

Lacy, *Judge*, delivered the opinion of the court:

The proceedings in this case are partly according to the practice in courts of chancery and partly according to the practice of courts of law. They are authorized and regulated by an act of the late Territorial Government, approved Nov. 7th, 1831. *Ark. Dig. p.* 344, *sections* 89 *to* 93.

It is contended, in behalf of the plaintiff in error, that the court below erred in refusing to dismiss and set aside the proceedings in this case on his first motion made for that purpose. The bare statement of the ground of that motion will be sufficient to prove its futility.

It is said that the writ was unauthorized by law, and therefore illegally issued; and further that the writ of garnishment was contrary to an agreement between the creditor, by his agent, and one of the original defendants. We will barely remark that, the writ issued in conformity to law, and that the agreement as set forth, is a mere *nudum pactum.* And such matter constituted no foundation for a dismissal of the suit.

It is further asserted that the court below erred in not dismissing the proceedings upon the filing of the garnishee's answer. The record does not show that any motion was made to dismiss, and even if there had been, the court could not have sustained it. The statute gives the plaintiff the right to deny the truth of the answer, and to empannel a jury to try the issues formed. Therefore, an action of garnishment does not go off like an injunction, upon filing an answer to the interrogatories put. The answer, in the present case, is sufficient to charge the garnishee, for it shows funds and available means placed in his hands by one of the judgment debtors, for the purpose of paying off the very debt, for which he was garnisheed.

The other grounds assigned for error, present a single question, arising out of the facts appearing in the motion and affidavit of the garnishee to dismiss and set aside the rule against him to account.

The levies made upon the property of James W. Walker were no extinguishment of the judgment even as to him. Because, on each levy, the property did not remain in the hands of the Sheriff, but was redelivered to the original judgment debtor, who was never deprived of the possession or use, but for a short time. And the Sheriff in redelivering the same acted in strict conformity to his duty; and of course no action accrued to the original judgment creditor on the levy upon the slaves seized in execution. If the Sheriff was liable at all, it was for failing to make a proper levy or legal return to the writ of *venditioni exponas*. The levies were no extinguishment or satisfaction of the judgment as to Joshua T. Walker or Simon T. Sanders. Nothing but actual satisfaction would release them. If Joshua T. Walker was not discharged from the judgment by the levies, then undoubtedly his garnishee, who admitted in his answer that he held available funds in his hands for the purpose of paying off the judgment, could not claim to be exonerated from its liability. If Joshua T. Walker was liable because there was no actual satisfaction of the judgment, of course, his property in the hands of his garnishee was likewise liable.

It is contended that the judgment was satisfied by a payment made to the Sheriff, by the receipt of John Trigg, agent of Bradley, and by the receipt of the bank notes, some silver, and one copper coin, in discharge of the execution.

It is clear to our minds that the Sheriff had no right to make any such return. There is no proof that Trigg was the authorized agent of Bradley to receive of James W. Walker a draft on E. Myrick, payable at sight in New New-Orleans, for the sum of $2,000, in discharge of the judgment, or that the amount was ever. paid over to Bradley in satisfaction of so much of the judgment; consequently the Sheriff's receipt or certificate on the *venditioni exponas* constituted no legal satisfaction of the judgment as to the garnishee. As to the funds paid, there is no proof or allegation that the Sheriff was authorized by

Bradley, his agent, or attorney, to receive such funds. But it is in proof that Bradley's attorney positively refused to receive them.

Whether or not the reception of these funds by the Sheriff operated as a discharge of so much of the judgment against James W. Walker, we do not feel ourselves called on to determine, as that point is not legitimately now before us; nor is it necessary for us to decide whether or not the Sheriff rendered himself liable to Bradley for a failure to make a proper levy, or for a false return upon the execution. Be that as it may, the reception of the bank notes did not discharge the other defendants, nor the garnishee, as their debtor. Because the reception was not an actual satisfaction of the judgment as to them or the garnishee. The true rule upon this subject is " that when a levy under execution is made upon personal property of sufficient value to satisfy the execution, and the property so seized does not again come to the possession of the debtor, the levy is a satisfaction of the execution," " although the property is wasted or misapplied by the Sheriff." " But if the debtor again receives the goods levied on, there is no such satisfaction. The satisfaction dates from the time of the levy. So long as the property remains in the hands of the Sheriff or in other words, *in custodia legis,* the debtor has the general property in the goods, and does not part with it until the sale, for until the sale it is possible that he may again take the property." " Actual satisfaction of the debt or judgment by the sale of the property of one debtor or defendant is a discharge of the other debtor and defendants." " But when satisfaction is worked by the levy without sale, only the debtor or defendant whose goods are levied on is discharged, and his co-defendants remain still liable, because the creditor hath had no actual satisfaction of his judgment."

The application of these principles, according to the view we have taken in the present case, clearly demonstrates that the garnishee was not exonerated or discharged from his liability by the levies. And even if the facts as set out in his affidavit constituted a good discharge, it is exceedingly doubtful whether or not advantage of it could be taken by motion to dismiss the suit or quash the proceedings against him. No matter of defence arising after action brought, can properly be *pleaded generally*, but ought to be pleaded in bar of the further

maintenance of the suit.    And if it arise after issue joined, it must be pleaded *puis darrein continuance.    Howe's Prac.* 431; *Broome vs. Beardsley,* 3 *Caines,* 172; 1 *Ch. Pl.* 532; *Cobb vs. Curtiss,* 8 *J. R.* 470.

The facts as disclosed in the affidavit upon which the motion to dismiss the suit and set aside the rule to account was founded, accrued after the issuing and service of the writ of garnishment.

Had the garnishee produced in court the goods, moneys, credits, and effects in his hands, he might, according to the requisites of the statute, have claimed to be discharged with his costs.   He certainly, in his answer, has not alleged that he tendered the notes, accounts, and receipts to the court, nor has he stated that he holds them subject to its order.   His answer simply states the amount of available funds that Joshua T. Walker placed in his hands for the payment of the judgment, and to it is attached a schedule of each particular claim or demand which he exhibits to the court.   It admits $200 was collected out of the accounts.   At the April term, 1837, the court made an order directing him to proceed and collect the residue of the notes, accounts, and receipts in his hands, and make report to the next term of the court.   To this order he did not object, nor did he show any unwillingness to execute it.   He was personally present in court when it was made, and having failed to object to his appointment, it *must* be presumed that he acquiesced in it, and took upon himself the *trust* imposed.   He did not then allege that the notes, accounts, and receipts were not due and owing from the persons who executed the same, nor did he allege their inability to pay or insolvency.   At the same term, he tendered in part payment on the judgment the receipt of John Trigg, for which he was allowed a credit, by order of the court, of one thousand dollars.   At the October term, 1838, his motion to dismiss was overruled, and no further order seems to have been then entered in regard to the garnishee's accounting.   At the April term, 1839, upon motion of the plaintiff's counsel, a rule was entered against the garnishee to account forthwith, and a copy of it regularly served upon him.   During all this time the garnishee never once sought to discharge himself from his liability, by alleging and establishing the fact that he could not collect the money, or had not collected the notes, accounts, and receipts placed in his hands.   By fail-

ing to render to the court any legal excuse for disobeying its order, which he had voluntarily assumed to execute, surely he rendered himself personally liable for the amount admitted to be due and in his hands.

At the November term, 1839, the court rendered judgment against him. He even then did not object to his liability upon the ground that he had obeyed the previous order of the court, or that he could not execute it by reason of any inability of his own, or that of the individuals who were owing the claims put in his hands for collection. His failure then to obey the order of the court, and his express acknowledgment that the notes, accounts, and receipts, were still in his hands, was certainly sufficient to render him personally liable, and to authorize the court to decree against him.

The court proceeded to decree against him because he admitted that he possessed available means and effects, placed in his hands by Joshua T. Walker, one of the original defendants for the purpose of paying off the judgment, upon which the writ of garnishment issued. Having failed to make a legal tender to account, or to produce the notes, accounts, and receipts in his hands to the court, he of course became personally responsible for as much as he admitted to be due in his answer. Although it is true, as contended by the counsel for the plaintiff in error, that his answer was full and complete as to all the interrogatories filed, still he has no right to claim to be dismissed with his costs, if his answer shows that he has available means in his hands which he retained, belonging to the original judgment debtor; neither is it necessary for the plaintiff to put the allegations of his answer in issue, and demand a jury for determining the truth of it. As we before remarked, the proceeding in this case is partly according to the practice in courts of chancery; and in such cases the answer of a defendant will certainly charge him, if he admits a certain amount to be due in his hands, and such also we apprehend is the correct rule in the case now before us. The garnishee first rendered himself liable by his own admissions and showing—he fixed this liability personally upon himself by disobeying the order of the court to account, and by being guilty of laches in the discharge of the duty

imposed upon him. And, therefore, the court after giving him credit for all the money paid over, rightly decreed against him for the residue admitted to be in his hands unappropriated. The judgment of the court below must therefore be affirmed with costs.

The remaining cases decided at this term are necessarily postponed until the third volume.